IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs November 12, 2008

**HOMER T. RIVERS v. STATE OF TENNESSEE**

**Appeal from the Circuit Court for Hardeman County**
**Nos. 05-01-0137; 06-01-0198     J. Weber McCraw, Judge**

**No. W2008-00508-CCA-R3-PC  -  Filed April 21, 2009**

The petitioner, Homer T. Rivers, appeals from the Hardeman County Circuit Court's denial of his petition for post-conviction relief from his guilty plea convictions on one count of delivery of a schedule II controlled substance (cocaine), a Class B felony, and one count of simple possession of a Schedule VI controlled substance (marijuana), a Class A misdemeanor.  On appeal, the petitioner argues that he received the ineffective assistance of counsel and that counsel's ineffective assistance rendered his guilty pleas unknowing and involuntary.  After reviewing the record, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed.**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and ALAN E. GLENN, J., joined.

Gary F. Antrican, District Public Defender; and Periann Houghton, Assistant District Public Defender, for the appellant, Homer T. Rivers.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophia S. Lee, Assistant Attorney General; D. Michael Dunavant, District Attorney General; and Joe L. VanDyke, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

        At the petitioner's January 11, 2006 guilty plea hearing, the State summarized the proof that it would have presented had Case No. 05-01-0137 gone to trial:

        This was an indictment for delivery of Schedule II, cocaine, .5 grams or more.  Had this matter gone to [trial], the State would have introduced proof that on or about the 15th of July, 2005, officers with the West Tennessee Judicial Drug Task Force met

with Special Agent David Murphy of the Mississippi Bureau of Narcotics regarding a cocaine buy that M.B.N. had done on or about the 14th of February 2005.

It appears that [the] Mississippi Bureau of Narcotics had done a cocaine buy with a confidential informant. Unknowingly, they had crossed the state line from Benton County, Mississippi, into Hardeman County, Tennessee, where the buy was made. The buy was recorded, turned over to the Tennessee officials. The controlled substance had been tested both in Mississippi and in Tennessee. There is a test result from both labs showing .57 grams from Mississippi; .5 grams from Tennessee, based on the amount used in the testing. But this buy, in fact, did take place here in Hardeman County . . . .

In case No. 06-01-0198, the petitioner was charged via criminal information with one count of simple possession of marijuana. The State noted that the charge resulted when a Hardeman County sheriff's deputy pulled over a vehicle belonging to the petitioner, who was wanted on an outstanding warrant. "When [the petitioner] exited the vehicle, a small bagg[ie] of a green leafy plant material" which later tested to be marijuana "was found in the seat." The petitioner pled guilty to both offenses as charged in the indictment. Although the petitioner's guilty plea agreement and the judgments resulting from these guilty pleas are absent from the record, according to the plea hearing transcript the trial court sentenced the petitioner to eight years' probation as a Range I, standard offender for the cocaine delivery conviction and eleven months, twenty-nine days' probation for the marijuana possession. The trial court revoked the petitioner's community corrections probation from a previous case and ordered that the petitioner's sentences in the instant matter be served consecutively to each other and to the prison sentence the petitioner would serve as the result of his probation being revoked.

On June 26, 2006, the petitioner filed a timely pro se petition for post-conviction relief. In the petition, the petitioner alleged that counsel rendered ineffective assistance by, among other things, failing to properly investigate the case, coercing the petitioner into pleading guilty, failing to challenge the trial court's jurisdiction, and failing to file motions to suppress evidence, dismiss the indictments against him, and inspect the grand jury minutes. The petitioner also alleged that counsel's ineffective assistance rendered his guilty pleas unknowing and involuntary. The post-conviction court summarily dismissed the petition for failure to state a colorable claim for relief. The petitioner appealed, and concluding that the petition did state a colorable claim, this court remanded the case to the post-conviction court for the appointment of counsel and an evidentiary hearing. Homer T. Rivers v. State, No. W2006-01607-CCA-R3-PC, 2007 WL 1610095, at *1-2 (Tenn. Crim. App. June 1, 2007).

The petitioner's post-conviction counsel filed an amended post-conviction petition which made several additional allegations, including: (1) counsel failed to communicate with the petitioner and failed to investigate the allegations against the petitioner; (2) counsel failed to interview witnesses and develop a trial strategy; (3) counsel failed to explain that the petitioner would, following his guilty pleas, be placed on supervised probation which would be served consecutively to the sentence for his probation violation; (4) the trial court improperly sentenced the petitioner; (5) counsel "did not obtain a waiver of appeal as to [the petitioner's] sentence"; and (6) counsel "did not

develop a theory of defense other than that [the petitioner] should plead." However, on appeal the petitioner makes only the general arguments that counsel provided ineffective assistance and that his guilty pleas were unknowing and involuntary. We will limit our review of the evidence presented at the January 30, 2008 evidentiary hearing accordingly.

Evidentiary Hearing Testimony

The petitioner testified that he had asked counsel whether the Tennessee authorities were aware of the Mississippi authorities "coming to my house and getting me on a drug buy," counsel had replied that the Tennessee authorities were aware of the investigation. The petitioner also claimed that counsel told him that a Tennessee Bureau of Investigation (TBI) agent was present with the Mississippi police when he was arrested. He said that he later learned, upon reviewing the record in this case, that "Tennessee didn't know [anything] about it [until] four months after it happened. So I feel [counsel] lied to me."

The petitioner said that counsel told him that were the case to go to trial, the State would push for a twenty-year prison sentence, and that between this potential sentence and the evidence against him, pleading guilty was in his best interest. He said that he entered his guilty pleas based upon counsel's advice. The petitioner testified that he met with counsel several times before pleading guilty but that counsel provided him erroneous advice. He claimed that he was unaware of the simple possession charge against him before he pled to it and that counsel never informed him what a "criminal information" entailed. He also claimed that counsel incorrectly told him that upon pleading guilty, "I was going to get eight years but it was going to be suspended, that I wouldn't have to be on papers or nothing for it"; the petitioner added, "I didn't know I was going to be on no eight years' paper. If I knew that, I wouldn't have [pled guilty]." The petitioner admitted that he told the trial court that he was satisfied with counsel's representation but that he did so because "that's what [counsel] told me to do . . . ."

On cross-examination, the petitioner acknowledged that he had several prior felony convictions, including a 2004 conviction for aggravated assault, convictions in 2001 for felony weapons possession and evading arrest, and a 1997 conviction for voluntary manslaughter. The petitioner agreed that his criminal record would have made him eligible for sentencing as a multiple offender would had he been convicted at trial, whereas he was sentenced as a Range I offender upon his guilty plea. He acknowledged that he received probation for the instant offenses, but he did not view these sentences favorably because he was now incarcerated for violating his probation, a sentence which resulted from his guilty pleas in the instant matter. The petitioner insisted that counsel did not tell him about the tests performed on the drugs he sold to the confidential informant or about the confidential informant being prepared to testify for the State at trial.

Counsel, who represented the petitioner in this case as well as in some of the petitioner's previous matters, testified that he had "[m]ultiple conversations" with the petitioner prior to his guilty plea because the plea "also entailed a [community corrections] sentence which he received in 2004 which was eight years . . . [for] aggravated assault for shooting his cousin in the shoulder." Counsel said he believed that the petitioner's criminal record could have made him eligible to be indicted as a Range III offender but that he was indicted as a Range II offender and sentenced as a

Range I offender following his guilty plea. Counsel testified that he communicated the substance of the guilty plea negotiations to the petitioner, noting that they "always had an open line of communication. . . . We discussed this matter in great detail. . . . [The petitioner] asked me specifically whether or not he would have to serve time; what, if he pled guilty, would be the result of his [community corrections] violation." Counsel also noted that he reviewed the plea agreement "line by line" with the petitioner and that the petitioner "knew that he was going to receive some incarceration time" for his community corrections violation.

Counsel added that the petitioner's testimony about not understanding the nature of his probationary sentences was not credible given that the petitioner "has spent a large majority of his adult and his minor life on probation and understands when you plead to a felony what the result is." He also noted that during the plea colloquy, he stated on the record that the petitioner would be incarcerated for his community corrections violation and that his probationary sentences in the instant matter would not begin until after he served his sentence for the previous conviction. On cross-examination, he added that he explained these consequences to the petitioner before he entered his guilty plea.

Counsel testified that he explained the jurisdictional issues to the petitioner and that he told the petitioner that the confidential informant was prepared to testify for the State at trial. He also said that he explained the results of the drug tests to the petitioner. On cross-examination, counsel said that he did not specifically tell the petitioner that Mississippi authorities could cross the state line and make an arrest in Tennessee, although he did explain to the petitioner "who was involved in the case and how the case came about."

The post-conviction court entered an order denying the petitioner relief. In the order, the post-conviction court found that the petitioner did not receive the ineffective assistance of counsel and that the petitioner "knowingly and voluntarily entered a plea, . . . understood the significance and consequences of the plea and sentence. . . . The petitioner was not coerced into entering a plea." The petitioner subsequently filed a timely notice of appeal.


ANALYSIS

The burden in a post-conviction proceeding is on the petitioner to prove his grounds for relief by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f). On appeal, we are bound by the trial court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. Fields v. State, 40 S.W.3d 450, 456 (Tenn. 2001). Because they relate to mixed questions of law and fact, we review the trial court's conclusions as to whether counsel's performance was deficient and whether that deficiency was prejudicial under a de novo standard with no presumption of correctness. Id. at 457.

Under the Sixth Amendment to the United States Constitution, when a claim of ineffective assistance of counsel is made, the burden is on the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. Strickland v. Washington, 466 U.S. 668,

687 (1984); see Lockhart v. Fretwell, 506 U.S. 364, 368-372 (1993). In other words, a showing that counsel's performance falls below a reasonable standard is not enough; rather, the petitioner must also show that but for the substandard performance, "the result of the proceeding would have been different." Strickland, 466 U.S. at 694. The Strickland standard has been applied to the right to counsel under article I, section 9 of the Tennessee Constitution. State v. Melson, 772 S.W.2d 417, 419 n.2 (Tenn. 1989). In the context of a guilty plea as in this case, the effective assistance of counsel is relevant only to the extent that it affects the voluntariness of the plea. Therefore, to satisfy the second prong of Strickland, the petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985); see also Walton v. State, 966 S.W.2d 54, 55 (Tenn. Crim. App. 1997).

In this case, the post-conviction court accredited the testimony of counsel, who testified that he explained the nature of the case against the petitioner, particularly the jurisdictional issues associated with the case, as well as the length and manner of sentences to which the petitioner would be exposed were he to plead guilty. Although in this post-conviction case the petitioner expresses displeasure with his guilty pleas and resulting sentences, the record reflects that at the guilty plea hearing the petitioner was made aware of the sentences he would face and that he stated that he understood the sentences. The record reflects that had the petitioner been convicted at trial, he would have faced sentences of incarceration as a Range II offender; however, counsel and the State negotiated a plea agreement under which the petitioner would be sentenced to probation as a Range I offender—an agreement about which the petitioner did not complain at the plea hearing. Given the evidence, we agree with the post-conviction court's conclusion that the petitioner did not receive the ineffective assistance of counsel and that the petitioner's guilty pleas were knowing and voluntary. We therefore deny the petitioner relief.

CONCLUSION

Upon consideration of the foregoing and the record as a whole, the judgment of the post-conviction court is affirmed.

_____

D. KELLY THOMAS, JR., JUDGE